PARNELL et al. v. TRUSTEES OF ORANGE LAKE CONSOLIDATED SCHOOL DISTRICT.

(Division A.   March 24, 1930.)

[127 So. 280.   No. 28550.]

Ford, White, Graham & Gautier, of Gulfport, for appellants.

**Bullard & Bullard,** of Hattiesburg, for appellees.

Argued orally by **E. J. Ford,** for appellant and **W. D. Bullard,** for appellee.

**Cook, J.,** delivered the opinion of the court.

This is an appeal from a decree of the chancery court of Jackson county, validating twenty thousand dollars

of bonds sought to be issued by the Orange Lake consolidated school district.

From the minutes of the county school board as they appear in the record of this case, the following facts appear: On July 17, 1928, upon a petition signed by a majority of the school patrons of four rural school districts, namely, Pecan, Ft. Lake, Orange Grove, and Kreole, the territory comprising these several districts was included in the Orange Lake consolidated school district, then attempted to be organized. It was afterwards discovered that certain territory included within the corporate limits of the city of Moss Point had erroneously been included within the boundaries of this consolidated school district. Thereafter, on April 17, 1929, at a called meeting of the county school board, petitions signed by a majority of the patrons of said Orange Lake consolidated school district, and also by two-thirds of the qualified electors of said district, praying for the dissolution of the district, were presented to the board, and these petitions were granted and said district was dissolved. Thereupon, at the same meeting of the school board, there was presented a petition praying for the organization of the Orange Lake consolidated school district out of territory described therein, which embraced only the territory included in the four rural schools above mentioned. This petition was signed by a majority of the school patrons of the proposed consolidated school district, but did not contain a majority of the patrons of the Kreole district. A number of the patrons of the Kreole district were present protested against the inclusion of the territory comprising that district in the proposed consolidated school district, but this protest was overruled and the petition was granted and the district formed, and it was ordered that "the schoolhouse be erected on the site selected on September 11, 1928, namely in the southeast quarter of southeast quarter of section 14, Township 7, Range 5."

Thereafter the action of the school board in creating such consolidated school district was certified to the

board of supervisors of the county by the county superintendent of education, and there was filed with the board of supervisors a petition signed by a majority of the qualified electors residing in the said Orange Lake consolidated school district, praying that the board cause to be issued twenty thousand dollars of bonds of said district, for the purpose of erecting and equipping school buildings, school barns, and for purchasing land for said school district. The board of supervisors thereupon adopted an order declaring its intention to issue the bonds, provided the issuance thereof was approved by a majority of the qualified electors voting at an election to be called for the purpose of determining whether the bonds should be issued. It was further ordered that the election commissioners of the county should call a special election to be held in said consolidated school district, the election to be held "at the Kreole schoolhouse for all qualified electors of said consolidated school district, residing within the bounds of the Kreole election precinct; at the Orange Grove schoolhouse for all qualified electors of said consolidated school district residing within the bounds of Orange Grove election precinct; and at Pecan schoolhouse for all qualified electors of said consolidated school district residing within Pecan election precinct."

In pursuance of this order of the board of supervisors, the county election commissioners ordered an election to be held at the three named schoolhouses in said district, and after the election the election commissioners made due report thereof to the board of supervisors, showing that a majority of those voting at the election had voted in favor of the issuance of the bonds. Thereupon the board of supervisors adopted an order for the issuance of the bonds, and a complete record of the proceedings therein was certified to the state bond attorney and to the chancery court, for the purpose of instituting this proceeding for the validation of the said bonds. At the hearing of this proceeding before the chancellor, objections to the validation of the bonds were interposed by

certain patrons of the district; the effect of these objections being summarized by counsel in the following language:

"First, the district itself was void and unlawful, and could not, therefore issue bonds, because the records show affirmatively that a majority of the qualified electors and patrons, either or both, of the several constituent school districts did not petition in favor of the consolidation, in that there was only three out of forty at the Kreole district who favored the consolidation.

"Second, the proposed issuance of the bonds is void, because an election was not held at the schoolhouse of the district nor at any convenient place, as provided by law, but, on the contrary the election was confessedly held at or near three places in the alleged district, none of which was a place designated by law.

"Third, the bond issue is void, because there was no legal consolidation in that there was never a location of the schoolhouse within the proposed district, and the location of a schoolhouse is a necessary jurisdictional fact for the establishment of a consolidated school district."

The statute authorizing the formation of consolidated school districts is found in section 100 of chapter 283 of the Laws of 1924 (section 8735 of Hemingway's 1927 Code), which reads as follows: "The county school board at any regular or at a special meeting called for that purpose, on petition of a majority of the patrons of a proposed consolidated school district may form a consolidated school district and it shall be the duty of the board to determine and to describe the boundaries thereof and to name the sections and parts of the sections composing the district and to designate the location of the schoolhouse."

There is nothing in this section to support the contention of counsel that a consolidated school district can only be formed on a petition signed by a majority of the patrons of each constituent common school district included in the proposed consolidated district. It is only

required thereby that a majority of the patrons of the proposed consolidated school district shall sign the petition for consolidation.

We think the contention of counsel that the proposed issue of bonds is void for the reason that the election was not held at the schoolhouse of the said district, or at a convenient place designated by the trustees of the school, is well taken. Section 106, chapter 283, of the Laws of 1924 (section 8741 of Hemingway's 1927 Code) provides, in part, as follows: "In any case where it becomes necessary to hold an election affecting any question submitted to the qualified electors in any consolidated school district in this state, said election shall be held at the schoolhouse of said district, or, if there is no schoolhouse, the election shall be held at a convenient place designated by the trustees of the school except in case of a line consolidated school in the issuance of bonds."

The record discloses that there is no schoolhouse of the consolidated school district at which the election could have been held, and it is not at all clear from the record that the several places at which an election was held were designated by the trustees. There was some testimony to the effect that two members of the board of trustees attended the meeting of the board of supervisors at which the election was ordered, and there informally notified the president or some member of the board of supervisors that the election should be held at the schoolhouses of three of the original common school districts. Conceding, but not deciding, that the board of trustees could in this informal manner designate a convenient place for the holding of the election, it is clear that it has not done so in this case. The statute requires that, if there is no schoolhouse of the consolidated school district, the trustees shall designate a convenient place for holding the election, and not several places. The plain language of the statute requires that the election shall be held at one place where all the qualified electors of the proposed district may vote, and not at several places in the district. In this instance it may have been as con-

venient, or even more convenient, to hold the election at the several places, but the statute has not so provided. The authority to hold the election rests solely upon the statute, and the holding of the election at one designated place within the district, as provided by the act, was essential to the validity thereof.

The appellant also contends that the bond issue is void because there was no legal consolidation, in that there was never a location of the schoolhouse within the proposed district, and the location of a schoolhouse is a necessary jurisdictional fact for the establishment of a consolidated school district.

The order of the school board establishing the Orange Lake consolidated school district recites that "the schoolhouse shall be erected on the site selected on September 11, 1928, namely in the southeast quarter of the southeast quarter of section 14, Township 7, Range 5." In the brief of counsel for the appellee it is stated that the site selected on September 11, 1928, and established in the first or original consolidation of this territory, was described with more particularity in the original order for consolidation, and that the location intended may be ascertained by a reference to that order. There is nothing in this record, however, to show the location of the site selected on September 11, 1928, except the particular description thereof as it appears in the order establishing the district; that is, "the southeast quarter of southeast quarter of section 14, Township 7, Range 5." We think, this designation of the location of the schoolhouse is entirely too indefinite, and does not meet the requirement of the statute that the school board shall "designate the location of the school house." In the case of Board of Supervisors v. Brown, 146 Miss. 56, 111 So. 831, 832, it was held that "designating the location of the schoolhouse is one of the essential requirements of the statute" for the completion of the organization of a consolidated school district, and that "the location of the schoolhouse was certainly required before the election to issue bonds was held, and the matter voted on by the residents of the

district." As to whether the order of the board attempting to designate the location of the schoolhouse may be aided by reference to an order fixing the location of a schoolhouse in another and prior proceeding, it will not be necessary to decide, for the reason that the uncertainty existing in the order attempting to locate a schoolhouse, as well as any uncertainty in the prior order to which reference is made, if there be any such prior order, may be removed by action of the school board before any further action is taken for the issuance of bonds of the district.

For the reasons herein stated, the decree of the court below validating the bonds will be reversed, and the validation proceedings dismissed.

Reversed and dismissed.